# EXHIBIT

# CHRISTOPHER HAINES AFFIDAVIT

STATE OF TEXAS        *

COUNTY OF BEXAR *

BEFORE ME, the undersigned notary public, on this day personally appeared Christopher Haines, who after being sworn stated the following under oath:

My name is Christopher Haines. I am the Vice President of Tolteca Enterprises Inc., dba the Phoenix Recovery Group. I have been an owner and officer of Tolteca since it was incorporated over 20 years ago. I am over the age of 18. I have personal knowledge of the following information which is true and correct. The company is closely held and I know completely the situation concerning collecting for Sunrise Bluff apartments. This Affidavit is based on my familiarity and knowledge of the information set forth herein and with regard to the account of the Speights. This Affidavit is factually true and correct.

I have read the motion for summary judgment and the following facts are true and correct upon my knowledge:

a. The Speights broke their lease at Sunrise Bluff apartments thereby becoming indebted to the apartment complex for unpaid rent, improper notice of vacating their apartment, and damages to their apartment unit. This is confirmed by the Statement of Deposit Account ("SODA") provided by the apartment complex to Tolteca. This is information Tolteca was entitled to rely on in order to attempt to collect the debt shown on the SODA from the Speights. Notably, the Speights did not dispute the SODA with Sunrise Bluff apartments or with Tolteca. The SODA is attached.

b. Tolteca has a contract to collect debts for Sunrise Bluff apartments which was entered into through its management company, CNC Investments. This contract to collect was in effect when Tolteca attempted to collect the Sunrise Bluff debt from the Speights. The contract to collect is still in effect and has not been modified, canceled, or terminated. The contract is attached.

c. When the Speights incurred an indebtedness as a result of breaking their lease obligations at Sunrise Bluff apartments, Sunrise Bluff and its management, CNC Investments, placed the debt with Tolteca for the purpose of collecting the debt. The Speights have falsely alleged in their Complaint that Tolteca had no authority to collect for Sunrise Bluff apartments. The allegation is blatantly false as shown by the attached contract to collect for Sunrise Bluff apartments.

d. The debt amount was established by Sunrise Bluff apartments and CNC Investments and that debt amount arose in November 2016 for $4,578.18. See, SODA, attached. This is the basic information relied on to begin its collection activity of the debt the Speights owe their creditor. There is nothing unlawful about seeking to collect a debt that a creditor places with a collection agency.

e. Because the Speights did not pay their debt, their debt was placed with Tolteca for collection. Debt collection is not inherently unlawful because creditors are allowed to collect what

1

is owed to them. The Speights' lease agreement provides that unpaid charges can be referred to a collection agency and that collection fees can be added, along with interest.

 f. The Speights' unpaid debt shown on the SODA was sent to Tolteca for collection.

 g. The lease also provides that the Speights have to pay any collection agency fees and interest on the debt. The lease provides for 18% interest on unpaid debt. Tolteca's client, Sunrise Bluff apartments and its management company, as per the collection contract, informed Tolteca to also collect interest on the debt. See lease contract, see collection contract, see discovery responses.

 h. The Speights vacated their apartment unit without giving proper written notice and they did not provide a proper forwarding address which actions are other breaches of the lease agreement.

 i. In accordance with the FDCPA and Texas Debt Collection Act , Tolteca sent written notice of the debt to the Speights. The Debtor Notes confirm the required first notice validating the debt was timely sent to the Speights on November 10, 2016.  A copy of the debtor notes are attached. The first notice letter was sent the day after the debt was placed for collection by the Speights' creditor, Sunrise Bluff apartments.

 j. Tolteca called the Speights to discuss the debt and the Speights returned the telephone call and the debt was discussed after Tolteca informed the Speights that they were communicating with a debt collector and any information provided could be used for that purpose.  That occurred on 11/14/2016, and this confirms that Tolteca was the collection agency and point of contact about the debt they owed their creditor. The debtor notes confirms this information and that the Speights knew about the debt by November 14, 2016.

 The notes state,

 "Icc from dbtr 2 mm said she did not agree with balance but did not give proper notice..."

 The message recorded on the Debtor Notes means, incoming call (abbreviated as icc) from debtor number 2, which means Loryn Speight, and she was told that she was communicating with a debt collector and any discussion about the debt could be used for the purpose of collection. This is the "mini miranda"  abbreviated as "mm" in the Debtor Notes.  See, attached Debtor Notes.

 15 USC Section 1692e(11) requires a debt collector to inform a consumer "this is an attempt to collect a debt, and any information obtained can be used for that purpose" in the initial communication.  Tolteca fully complied with this legal requirement.

 What this shows as a fact is that the debtor, the Speights, knew about the debt back in November 14, 2016. What this also shows as a fact that Tolteca complied with the law and followed the prescribed legal steps to collect a consumer debt.

k. On the same date, November 14, 2016, Loryn Speight asked Tolteca to send her the "SODA" (which means the Statement of Deposit Account) and to email it to her. The SODA was emailed to her on 11/14/2016 and the SODA was also emailed to her husband, Patrick Speight on 11/14/2016. See the SODA attached.

The debtor notes states, "dbtr mm sd send her soda and she will cb e-mailed".

Which means the debtor was told the "mini miranda" the debtor asked for the Statement of Deposit Account (SODA) and she would call back and asked for the SODA to be emailed to her.

l. Also, a $25 collection agency fee was added onto the debt amount of $4,578.18 and this occurred in November 2016. The Speights were informed of the $25 collection fee by email on January 18, 2017 but were told of the agency fee in the verbal discussions back in November 2016. The Speights did not dispute the agency fee, accrued interest, and debt amount for over 5 years. Due to a lack of dispute, Tolteca was entitled under federal law to assume that the debt was valid and owed. 15 USC 1692g(a)(3).

m. The lease agreement provides that collection agency fees can be added onto the debt and Texas law does not prohibit such a fee because it is in the underlying lease contract.

Also, the following is factually true and correct:

Tolteca had a written contract to collect debts for Sunrise Bluff apartments. This contract was executed by CNC Investments for Sunrise Bluff apartments as their manager. A copy of the contract has been produced in discovery in the Speights' lawsuit and it lists Sunrise Bluff apartments as one of numerous other apartment complexes CNC hired Tolteca to collect for. A copy of the contract is attached.

Consequently, the Speights' allegation in their Complaint that Tolteca was not authorized to collect the debt is false, misleading and untrue. Another false, misleading and untrue statement is that Tolteca's collection contract was canceled or terminated. Tolteca continues to collect for Sunrise Bluff apartments presently. Tolteca has not been canceled or terminated as a collection agency for properties CNC manages, which includes Sunrise Bluff apartments.

Sunrise Bluff apartments sent Tolteca the Speights' debt to collect. This occurred November 9, 2016. The Speights knew about the debt because they communicated with Tolteca about the debt November 14, 2016. Also, they were sent notice of debt by email on November 14, 2016 and in January 2017 that explained the debt their creditor was seeking to collect upon. Also, the Speights were verbally informed about the debt back in November 14, 2016. A copy of the January 2017 email is attached. Furthermore, Tolteca's debtor notes, which are Tolteca's business records, indicate that the Speights knew about the debt back in November 2016. The notes are attached in support of this Affidavit. This again shows that Tolteca acted lawfully since none of the foregoing constitutes criminal action.

Even though the Speights knew of their debt owed to Sunrise Bluff apartments since November 2016 they did not contact Tolteca to dispute the debt. Therefore, the debt was assumed as being valid and owed as per 15 USC 1692g(a)(3).

15 USC 1692g(a)(3), provides that a consumer who does not dispute a debt within 30 days after receipt of notice of the debt then the debt will be assumed valid by the debt collector.

The debt was not disputed until the Speights filed their Complaint in which the Speights falsely alleged that Tolteca misrepresented the debt and its character and amount. The debt amount is accurate and correct. The debt is accurate because it is based on the creditor's itemized SODA and the fact that the interest calculation is mathematically accurate since it is done by a computer program at Tolteca's place of business in San Antonio, Texas. The Speights have not provided any evidence the debt amount or its character or extent is invalid, not owed and not accurate. Their allegation is another example of the Speights making false, misleading and untrue claims against Tolteca in their lawsuit.

The debt arose because the Speights breached their lease contract and defaulted on their obligation to pay rent, did not give proper notice of vacating their unit, and because they damaged their rental unit. Because the Speights breached their lease and defaulted, and damaged their apartment, Sunrise Bluff apartments issued a Statement of Deposit Account setting forth the charges the Speights owed. Because the Speights did not pay their debt, Sunrise Bluff apartments and their management company CNC Investments placed the debt with Tolteca to collect on the account. The SODA is attached. The SODA constitutes proper credible evidence that the Speights owe money to Sunrise Bluff apartments and the fact that they did not dispute the debt is further confirmation that they owe a debt to Sunrise Bluff apartments.

In addition to the debt which is set forth in the attached Statement of Deposit Account, Tolteca added a $25 collection agency fee. The $25 fee was a one time charge added on back in November 2016. The $25 charge was not disputed. The $25 charge was not assessed but one time, back in November 2016. The charge was not annually assessed. The agency fee is allowed by the Speights' lease agreement as is the charging of interest. *See lease agreement excerpt.*

Tolteca did not know and was not informed that Sunrise Bluff apartments, its manager or owner, hired Rent Recovery Solutions several years later to collect the same debt for Sunrise Bluff apartments from the Speights. Furthermore, and this is important, Tolteca was hired to collect the debt years BEFORE Rent Recovery Solutions attempted to collect the debt. Furthermore and significantly, Sunrise Bluff apartments, the Speights, or the owner or manager of Sunrise Bluff apartments did not inform Tolteca that its collection contract was terminated. At present Tolteca still has not been notified that its collection contract has been canceled or terminated concerning Sunrise Bluff apartments.

Also, Rent Recovery Solutions did not contact Tolteca either to let Tolteca know that they had been retained to collect on the Speight account to collect the debt they owe Sunrise Bluff apartments. I would know if the collection contract was canceled or terminated since I run the

4

company along with Venessa Gamboa, company President. Also, Tolteca had no reason to know another debt collector was hired and Tolteca had no duty to so investigate. If the Speights have a claim for the apparent double entry on their credit report of the same debt then that is not Tolteca's doing or fault. The Speights should address the matter with Sunrise Bluff and its manager or owner or with Rent Recovery Solutions. They are to blame. Not Tolteca. Tolteca had no knowledge of the debt being reported a second time by Rent Recovery Solutions until this lawsuit was filed. Tolteca had no knowledge or involvement about Rent Recovery Solutions being hired to collect the same debt. Again, Tolteca sought to collect BEFORE the other company ever got involved. Consequently, the Speights allegation in their Complaint that Tolteca violated the FDCPA and Texas Debt Collection Act by using deceptive or criminal means to collect from the Speights is false, misleading, and untrue. The Speights have no evidence supporting their allegation.

      The Speights have improperly assumed that Tolteca doubled up on their debt account. That did not happen because the debt was placed for collection with Tolteca years before Rent Recovery got involved in attempting to collect the same debt. Since Tolteca was retained by authorized contract to collect the Sunrise Bluff debt, and since Tolteca was not aware that Rent Recovery Solutions sought to collect the same debt subsequent to Tolteca's collection efforts, Tolteca bears no responsibility for the reporting of the debt twice because Tolteca was the very first collection agency and acted without knowledge of Rent Recovery's involvement. Consequently, the Speights allegation in their Complaint that Tolteca violated the FDCPA and Texas Debt Collection Act is false, misleading and untrue. If anyone double counted the debt it would be a liability problem for Sunrise Bluff apartments, its manager, its ownership or Rent Recovery Solutions. They erred in reporting the Speights debt twice. That is what factually happened and that is true and correct.

      Whether the Speights simply erred in making the wrong assumption or they have intentionally made the false claim about Tolteca double reporting the Sunrise Bluff debt still does not change the undeniable fact that Tolteca did not, directly or indirectly, report the Sunrise Bluff debt twice.

      In addition, Tolteca did not use any criminal means to attempt to collect the debt. Tolteca adhered to the law which included: Tolteca communicated the "mini miranda" statement in communications with the Speights; Tolteca sent written notice of the debt and the SODA in November 2016 as required by the FDCPA and Texas Debt Collection Act; Tolteca validated the debt. Tolteca sought to collect the debt Sunrise Bluff calculated and itemized as being owed. Tolteca added interest onto the debt as per the request of Sunrise Bluff and adding interest is authorized under the Speights lease agreement. The interest amount is based on the contract and conforms to the interest rate allowed under the contract. Tolteca's collection software computes the interest and the amount charged for interest is true and accurate. Again, the Speights did not dispute the underlying debt principal, the $25 collection fee and the interest for over 5 years.

      Furthermore, the Speights have falsely claimed in their Complaint that the amount and character of the debt was inaccurate because the debt Tolteca sought to collect was a different number than what Rent Recovery Solutions sought to collect. The reason the debt amount number is different is that Tolteca was told by its client, Sunrise Bluff and CNC Investments, to collect

5

interest on the original principal debt amount. Consequently, the allegation in the Complaint that Tolteca misrepresented the character, extent or amount the debt is false, misleading and untrue. Also, the allegation that Tolteca sought to collect interest which was not premitted is another one of the Speights' Complaint is a false, misleading and untrue allegations targeting Tolteca because the lease contract provides for charging of interest on the Speights' debt and the charging of interest is not prohibited by law. The lease agreement specifically authorizes the charging of interest and Tolteca's client, told Tolteca to collect interest. And, the Speights conceded in their discovery responses that interest could be charged on their debt. See, discovery responses.

It appears that Rent Recovery Solutions was not attempting to collect interest which fully explains why the collection amounts differ. Consequently, there is no evidence that Tolteca sought to collect an inaccurate debt amount. Whether the Speights have made a mistaken assumption or are intentionally fabricating the claim of inaccuracy, their inaccuracy claim is untrue as a matter of law. Tolteca did nothing wrong is attempting to collect on the SODA plus accruing interest.

The Speights lease provides,

"All unpaid amounts you owe, including judgments, bear 18% interest per year from due date compounded annually." See, Lease Agreement, Paragraph 32, Other Remedies.

Furthermore, I point out to the Court that the Speights admitted that interest was chargeable on the debt. This is shown in the admissions responses of the Speights. *See, Admissions Response.*

There is no evidence that Tolteca sought to collect an unlawful amount; the debt amount was calculated by Sunrise Bluff not by Tolteca and was itemized on the SODA; interest was computed on the debt by Tolteca's computer program and there is no evidence the interest computation is inaccurate; there is no evidence Tolteca's software program was malfunctioning or wrong; there is no evidence Tolteca reported the debt twice (because that was not done by Tolteca that was done by Rent Recovery Solutions AFTER Tolteca first attempted to collect the debt); there is no evidence that Tolteca knew about Rent Recovery Solutions attempting to collect the same debt; there is no evidence that Tolteca was not contractually authorized by Sunrise Bluff to collect the debt; there is no evidence Tolteca used criminal means to collect from the Speights; there is no evidence Tolteca misrpresented the amount of the debt; there is no evidence Tolteca had no contract to collect the debt; there is no evidence Tolteca took any action that cannot be legally taken; there is no evidence that demonstrates that Tolteca damaged the Speights; and there is no evidence Tolteca proximately caused any actual damages to the Speights.

In addition, there is no evidence that Tolteca did not follow the required legal steps to validate the debt; notify the Speights of the debt, and explain to them the $25 collection fee and interest accruing. Therefore no criminal or deceptive means was used.

In addition, the Speights have provided no concrete evidence of any damages. In response to discovery they state that the jury will decide damages. That is evasive and not an answer. They have not proven any actual damages nor do they have proof that Tolteca was the proximate

6

cause of any damages to them since they did get home financing from a mortage company who gave them a mortgage so they could finance a home puchase.

Tolteca firmly believes that fair understanding of this case shows the Speights sued the wrong party. If there was any violation of the law the blame is on Sunrise Bluff, its management company or owner, or Rent Recovery Solutions. They double reported the debt; not Tolteca. Tolteca relied on its client, Sunrise Bluff and CNC Investments to place the debt with Tolteca and as per the contract for collection, Sunrise Bluff and CNC Investments was contractually obligated to only place a valid and legitimate debt for collection with Tolteca. There is no evidence that debt is not owed; there is no evidence the debt amount is not legitimate; there is no evidence the debt is invalid; there is no evidence the Speights ever challenged the debt in writing; and there is no evidence the Speights disputed the debt with Sunrise Bluff, CNC Investments, the owner of the apartment complex or with Rent Recovery Solutions. Furthermore, the Speights were asked in discovery to produce documents showing:

> That Tolteca attempted to collect an inaccurate amount;
> That Tolteca was not authorized to collect a debt from the Speights;
> That Tolteca incorrectly communicated credit information;
> That Tolteca used criminal means to harm the reputation of the Speights;
> That Tolteca falsely represented the character and amount of the debt;
> That Tolteca communicate credit information that Tolteca knew or should have known was false;
> That Tolteca took action that cannot be legally taken;
> That Tolteca used false representations or deceptive means to collect or attempt to collect a debt from the Speights;
> That Tolteca attempted to collect an amount not authorized by the lease agreement.

In each of the foregoing Requests for Production the Speights did not provide any corroborating documents that were responsive to the production requests. This again shows that the Speights' lawsuit is unfounded, false, misleading, frivolous, vexatious, and untrue.

Finally, Tolteca informs the Court that it no longer seeks to collect the debt from the Speights and Tolteca has asked the credit bureaus to remove the tradeline. This does not mean that the Speights creditor or Rent Recovery Solutions have released the Speights from the debt. Due to portfolio maintenance, Tolteca has closed out the account, along with thousands of other accounts which is done routinely from time to time. This close out has nothing to do with Sunrise Bluff who continues to be a collection client with Tolteca on other matters.

The facts show that the initial communication (the validation notice letter) was sent; then by their own admission, the Speights called Tolteca and they were told about the debt which is totally legal, they never disputed the debt and because the steps taken to collect were legal there was no criminal activity that can be attributed to Tolteca. The claim of deceptive and criminal conduct is patently false, unsupported by any credible evidence and is ridiculous.

In summary, the Speights have manufactured a false, misleading and untrue set of allegations to try to pin blame on Tolteca. Tolteca believes this suit against Tolteca and its bond company is to get damages and liability from them for non existent liability and damages. This lawsuit is frivolous, filed in bad faith and is filed to harass Tolteca.

The documents referred to and cited in this Affidavit are personally known or familiar to me and they are business records of Tolteca kept in the regular course of business which are prepared, kept and maintained in the regular course of business to document Tolteca's contacts, discussions, and attempts to lawfully collect debts from consumers like the Speights and such records were made at or reasonably soon after the events, acts or recorded information stated therein by a person with Tolteca having knowledge of the information transmitted to be included in the records. The documents are accurate and it is Tolteca's regular business practice to record the information as is shown on the documents which are incorporated herein by reference. As Vice President of Tolteca I have custody of the documents and the information contained in the records as recorded are correct and accurate. At all times relevant to this matter, Tolteca used iworking and reliable debt collection software that is customarily sued in the debt collection industry. This software kept track of the Speights account and it calculated the accruiing interest and such calculations are computed correctly. The software works correctly and did so regarding the Speights' account.

_____
Christopher Haines, VP

Subscribed and sworn to before me on November 10, 2022

_____
Notary Public, State of Texas

RACHEL CECILIA GUERRERO
Notary Public, State of Texas
My Commission expires
October 15, 2023
ID No. 13221571-6

9